# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DARRELL W. TITUS,

    Plaintiff,

v.

ILLINOIS DEPARTMENT OF TRANSPORTATION,

    Defendant.

No. 04 C 7425
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrell Titus ("Titus"), an employee of the Illinois Department of Transportation ("IDOT"), alleges that he was a victim of racial discrimination when, on July 29, 2004, he was "assigned to a different shift while other non-blacks with less seniority were assigned to more favorable shifts." Titus demands $1,000,000 in damages for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Defendant has moved to dismiss Titus' claim on the grounds that Titus failed to allege an adverse employment action as required by Title VII, and because his § 1981 and § 1983 claims are barred by the Eleventh Amendment. Defendant also moves to strike Titus' demand for damages as it far exceeds the $300,000 cap established by Congress.

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant Defendant's Motion to Dismiss only if Titus cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the Complaint as true, drawing all reasonable

inferences from those facts in Titus' favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). In this case, because Titus is proceeding *pro se*, I must construe his Complaint liberally. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). I may only grant Defendant's motion if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

As Titus does not present direct evidence of discrimination in his Complaint, he must rely on the indirect method of proving his Title VII claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the indirect method, Titus will be required to establish a *prima facie* case of discrimination, demonstrating that: 1) he is a member of a protected class; 2) he was performing his job satisfactorily; 3) he suffered an adverse employment action; and 4) similarly situated employees who were not members of the protected class were treated more favorably. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). IDOT argues that Titus cannot satisfy the third element of the test as a matter of law.

Not everything that makes an employee unhappy is an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). An adverse employment action "significantly alters the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (citation omitted). For example, hiring, firing, failing to promote, reassigning with significantly different responsibilities, or decisions that cause significant changes in benefits may constitute adverse employment actions. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 753 (1998). A "purely lateral transfer," without more, is not an adverse employment action. *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). A reassignment can constitute an adverse employment action if the new position has fewer

opportunities for job promotions, *Grayson v. City of Chicago*, 317 F.3d 745, 750 (7th Cir. 2003), or if the reassignment has a less distinguished title. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1034 n. 13 (7th Cir. 2003).

In this case, Titus pled merely a change in job assignment. According to his Complaint, Titus was assigned to the "C" shift for nine years prior to July 29, 2004. On that date, Titus was assigned to the "B" shift (allegedly in violation of alleged administrative policies, and in disregard of IDOT and union rules, Titus' seniority and vacation time, and with improper notification of the transfer). Titus further alleges that other, non-black employees with less seniority were transferred to the more desirable "C" shift.[1]

Assuming that Titus' switch from the "C" shift to the "B" shift was a change from day shifts to night shifts for every month after July 2004, Titus has failed to plead an adverse employment action under Title VII. *See Williams*, 85 F.3d at 274; *see also Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir. 2001) (employer's decision to change Plaintiff's hours "certainly does not rise to the level of an adverse employment action"). Titus has failed to allege that his shift change resulted in a pay reduction, title change, or a significant change in job responsibilities. *Grube*, 257 F.3d at 728. In documents attached to his Complaint as well as his response to Defendant's Motion, Titus claims that the change resulted in an "inadequate shift

---

[1] The documents attached to Titus' Complaint demonstrate that he worked the "C" shift in July, 2004. Those forms indicate that in July, the "C" shift was a day shift. After learning of his transfer, Titus worked the "B" shift in August, September and October of 2004. However, the documents Titus attached to his Complaint indicate that in both August and October, the "B" shift was also a day shift. Those documents suggest that September was the only month during which Titus worked an evening "B" shift. Defendants argue that this one month shift change does not constitute an adverse employment action. However, as this is a motion to dismiss, I will construe the documents in Titus' favor and assume that the change from the "C" to the "B" shift constituted a change from day shifts to night shifts for every month after July, 2004.

3

change schedule doubling back, which is fatiguing and stressful." *Pl. Compl.*, p. 4. Construing this additional allegation in Titus' favor, I find that his claim still alleges nothing more than a schedule change that was displeasing to Titus, to the point of being fatiguing and stressful. The stressful effects of the schedule change do not convert that change into an adverse employment action. *See Tovar v. City of Chicago*, 2004 U.S. Dist. LEXIS 17610 at *18-19 (N.D. Ill. Aug. 27, 2004) (holding that a transfer to a position that was "more stressful" did not establish "materially adverse change in employment"). Because Titus has failed to plead an adverse employment action, Defendant's Motion to Dismiss his Title VII claim of employment discrimination is granted.

To the extent that Plaintiff raises a claim of discrimination on the basis of his race in violation of §§ 1981 and 1983, his claim is barred by those statutes. *See, e.g., Slovinec v. Ill. Dep't of Human Servs.*, 2004 U.S. Dist. LEXIS 7612 at *26-29 (N.D. Ill. Apr. 30, 2004) (noting that § 1983 imposes liability on "persons" acting under color of law who deprive other persons of constitutional rights, and observing the "well established principle . . . that neither a State nor a State agency is a 'person' for purposes of § 1983") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)).[2] Defendants similarly assert that Titus' claims are barred by the Eleventh Amendment. As Judge Filip noted in *Slovinec*, I should address the propriety of Titus' suit under § 1983 before resolving any Eleventh Amendment defense. *Id*. (citing *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-780 (2000)). In this

---

[2]Titus seeks leave to amend his complaint to add "ETP Management Jim McKay and Bill Heim" as Defendants. *Pl. Resp.* at 3. However, these individuals are merely Titus' supervisors, not his employers. Titus' proposed amendment will not prevent dismissal of his claims; therefore, his request to amend is denied.

4

case, Plaintiff's suit is barred both by the language of § 1983 and by the Eleventh Amendment. *See Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991).

Finally, Plaintiff's Complaint seeks relief in the amount of $1,000,000. That amount clearly exceeds the statutory cap for damages in Title VII cases.

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party . . . in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a (b)(3)(D) (West 2004). *See also Smith v. Chicago Sch. Reform Bd. of Trustees*, 165 F.3d 1142, 1149-50 (7th Cir. 1999). Titus' prayer for monetary damages in the amount of $1,000,000 is stricken.

For these reasons, Defendant's Motion to Dismiss is GRANTED, but in light of Plaintiff's *pro se* status, the claims are dismissed without prejudice.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: March 18, 2005